# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| **Zachary Kramer,** § § | |
| **Plaintiff** § § § | |
| § | **Civil Action No. _6:21-cv-49_** |
| § § | |
| **City of Shiner, Texas,** § | |
| **individual capacity,** § | **JURY TRIAL** |
| § § | |
| **Defendant** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This is an unlawful employment practices case. It involves a public entity and public official abuse of power that violated state and federal law, including the First and Fourteenth Amendments of the United States Constitution and the Texas Whistleblower Act.

### PARTIES

2. Zachary Kramer is an individual who worked as the Sheriff for the City of Shiner, Texas.

3. Defendant City of Shiner, Texas is a General Law Type A municipality located in Lavaca County, Texas. A waiver of service request will be sent to the City prior to any request for service.

### SUBJECT MATTER JURISDICTION

4. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 [federal question jurisdiction]. The court further has supplemental jurisdiction of the related state claims pursuant to 28 U.S. Code § 1367.

**PERSONAL JURISDICTION**

6.  The Court has personal jurisdiction over the parties to this civil action because (1) the claims asserted herein arose directly from Defendants' acts and omissions in Texas and (2) Defendants are domiciled in Texas.

**VENUE**

7.  Venue is proper in the United States District Court for the Southern District of Texas pursuant to 29 U.S.C. § 1391(b) because (1) the City resides within this judicial district, and all Defendants reside in the same state, and (2) all of the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

**ABBREVIATED FACTUAL BACKGROUND**

8.  The City of Shiner is a Type A general-law municipality. Under Texas law, a general-law municipality may act only by and through its governing body.

9.  The First Amendment prohibits a state actor/government employer from taking adverse action against an employee who expresses their opinions on matters of public concern. Employees who engage in whistleblowing activities, such as reporting fraud, criminal activity, or expressing concerns about health and safety, may have protections from retaliation for engaging in that form of speech.

10. In addition to the First Amendment, the Fourteenth Amendment provides an employee with certain protections such a due process and equal protection. Due process may be required in the event that disciplinary action, up to and including

termination, is taken against a civil servant. The Fourteenth Amendment's equal protection clause can cover claims premised upon unequal treatment or discrimination against an employee who works for state or local governmental entities.

11. Moreover, the Texas Whistleblower Act protects public employees who make good faith reports of violations of law by their employer to an appropriate law enforcement authority. An employer may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who makes a report under the Act.

12. On information and belief, the City of Shiner unjustly suspended with the intent to terminate Plaintiff after he raised concerns with regard to illegal conduct by members of the City's governing board and after he reported these perceived illegal and improper practices to the County Attorney.

13. On 07/07/2020, Plaintiff was appointed Police Chief by Shiner City Councilman/ Police Commissioner, Christopher "Bucky" Boehm and Mayor Fred Hilshear.

14. On or about 06/25/2021, Plaintiff was contact by City Secretary Natalie Fric in reference to the Shiner Police Department's higher than normal cell phone bill. Plaintiff was not in town, and asked Natalie to email him the bill to review and discuss charges.  After reviewing the bill, Plaintiff learned First Net is charging by

data usage - instead of unlimited data. The account was created under the impression of unlimited data versus being charged for usage. Due to this impression, police officers have been using their professional phones for personal use during breaks while on duty as evidence by watching videos, social media, hot spotting their work tablets, etc. The usage mistake could be corrected internally by SOP, however, while reviewing the bill, Plaintiff observed three charges for unknown iPads. Each iPad's data plan amount was $40.24. The Shiner Police Department did not own iPads or utilizes any software compatible with iPads. It was unknown how long the iPads had been on the bill incurring charges on the Shiner Police Department phone plan, who authorized the iPad connection, or who was using these iPads.

15. After having been with the Shiner Police Department for 16 years, Plaintiff had no knowledge of any authorization provided for iPads by prior Chiefs nor did he provide the authorization to add these iPads to the cell phone plan. Plaintiff spoke in further detail with Natalie Fric, via phone, regarding the iPads for the possibility of iPads belonging to another city agency/department and the possibility of a mistake adding to the police department bill. Natalie Fric reviewed, informing the iPads did not belong to any other city agency/department and she could not locate when the iPads were initially connected.

16.     Due to the possibility of internal theft or external fraud, or a mistake, Plaintiff decided it was best for an outside agency to investigate. As a result, Plaintiff informed Bucky Boehm, police commissioner and city councilman, about the discovery of iPads on the Shiner Police Department phone bill.  Boehm agreed and authorized the investigation for an outside agency to investigate. Therefore, Plaintiff requested the Lavaca County Attorney's Office to investigate.

17.     On 06/28/21, Plaintiff met with Lavaca County Attorney, Kyle Denney, to initiate an external investigation of the iPads. Kyle Denney asked Plaintiff to obtain additional information pertaining to the FirstNet account.  However, the County Attorney's office would pursue an investigation.

18.     Plaintiff provided all the information provided by the FirstNet representative to Kyle Denney followed by speaking with Natalie Fric and Bucky Boehm regarding the iPads. Natalie, Bucky, nor any other city officials/council members appeared to have knowledge on any request or authorization by Michael Furrh to add the iPads rate plans to the Shiner Police Department.

19.     On or about 06/29/2021, Plaintiff advised Mayor Fred Hilschear of the iPads on the Shiner Police Department data plan with FirstNet. Mayor Hilschear voiced no knowledge of the iPads. Additionally, Plaintiff informed him he had made a request

with the Lavaca County Attorney office to investigate for internal theft, external fraud, or a mistake.

20.     On 06/30/2020, Plaintiff was texted by Natalie Fric to come to her office. She questioned why Plaintiff went to the Lavaca County Attorney office, informing Plaintiff the Mayor informed her of the request. Natalie Fric informed Plaintiff he could get a lot of people in trouble by requesting the attorney's office to investigate. Plaintiff immediately went to the Mayor's office, where the Mayor informed Plaintiff that he remembered, after he left his office on 06/29/2021, the City Council approved the purchase of three iPads for the volunteer fire department using CARES Act funds. The Mayor then encouraged Plaintiff to speak to council member, Michael Furrh. Via phone, Michael Furrh informed Plaintiff the City Council approved the purchase of the iPads, however, could not remember when this was voted, or the purchase was authorized. Plaintiff informed Michael Furrh, he would access the City Council meeting minutes from Natalie Fric.

21.     Plaintiff returned to Natalie Fric's office requesting she locate the City Council meeting minutes approving the authorization of iPads. While he was in Natalie's office, Mayor Hilschear came to sign paperwork. Shortly after, Michael Furrh arrived at Natalie's office and aggressively asked what the deal was with the iPads. Plaintiff explained to him he was concerned with the iPads being on the Shiner Police

Department account without his knowledge. Michael Furrh began to chastise Plaintiff for initiating an investigation and said he should have just come to him in the first place. During the conversation, Plaintiff felt his comments were aggressive and meant to be intimidating towards him - this went on for several minutes before he left.

22. On 07/04/2021, City Hall posted the City Council Meeting Agenda, where Plaintiff discovered that all the police officers, including him, were listed for executive session to review appointments, evaluations, complaints, dismissals, etc.

23. On 07/06/2021, Bucky informed Plaintiff the police officers and he were listed in executive session because of the last few weeks. At this time, Plaintiff informed Bucky he would like any discussion regarding him to be discussed in open meeting. Plaintiff made this request due to feeling Michael Furrh attempted to intimidate him with aggressive communication, and hr did not want this to occur again in executive session.

24. On 07/07/2021, City Council was held, beginning at 6 PM. City Council entered executive session and Michael Furrh attended. Council returned to open session, they called Plaintiff's name and said that they would take comments from anyone that wanted to speak. Sgt. Furrh stood to make a comment and Michael Furrh excused himself from the room. Sgt. Furrh read a prepared statement, approximately 5-6 pages, complaining about Plaintiff's time in Shiner as Police Chief. Complaints

dated back to September 2020. Sgt. Furrh mentioned several things that had changed or occurred and her issues with each item. After no additional comments, city council members returned to executive session. Michael Furrh attended this executive session. Once council members returned to open session, Bucky Boehm made the motion to place Plaintiff on administrative leave for 14 days while the city investigates. Councilman David Schroeder seconded, followed by Councilman Louis Herman and Councilman Bucky Boehm and it passed, vote 3 to 0, with Michael Furrh abstaining; it was clear that the intent was to terminate him.

25. During the first 9 months of his tenure as the Chief of Police, Plaintiff had not been counseled, reprimanded, or disciplined for any reason. All council members had validated, encouraged, and praised his changes within the Shiner Police Department. There was no indication from the Council or the Mayor that the discussion of his job performance was going to be on the agenda for City Council meeting until three days after the mayor informed other city employees and council members of Plaintiff's request for outside investigation into possible internal theft of government property and money. It is Plaintiff's belief that my administrative leave and potential termination is a direct result of that request.

**CLAIM FOR RELIEF FOR FIRST AND FOURTEENTH AMENDMENT RETALIATION AND DUE PROCESS CLAIMS 42 U.S.C. § 1983**

26. Plaintiff spoke as a citizen on a matter of public concern and engaged in constitutionally protected speech.

27. Defendant acting under color of state law, through infliction of objectively adverse employment actions, illegally retaliated against Plaintiff because each engaged in constitutionally protected speech and deprived Plaintiff's constitutional rights. At the time of the adverse employment actions at issue in this civil action, the law prohibiting retaliation against a city employee for speaking as a citizen on a matter of public concern was clearly established. As a result, Plaintiff suffered harms and losses.

## CLAIMS FOR RELIEF AGAINST THE CITY: TEXAS WHISTLEBLOWER ACT

28. As the City's Sheriff, Mr. Kramer qualified as a "public employee" within the meaning of the Texas Whistleblower Act.

29. The City of Shiner is a "local government entity" within the meaning of the Texas Whistleblower Act.

30. The Texas Whistleblower Act prohibits local governmental entities from acting to suspend or terminate the employment of or taking "other adverse personnel action" against a public employee who reports to an appropriate law enforcement authority

what he or she in good faith believes to be a violation of law by the employing governmental entity or another public employee.

32. "Personnel action" includes any action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation.

32. As demonstrated by the facts, the City took adverse personnel actions against Mr. Kramer within the meaning of the provisions of the Texas Whistleblower Act.

33. As a result of the City's unlawful conduct, Mr. Kramer suffered harms and losses.

## CLAIMS FOR RELIEF AGAINST THE CITY: DECLARATORY RELIEF

34. Mr Kramer seeks declaratory relief pursuant to 28 U.S.C. § 2201.

35. Specifically, Mr. Kramer seeks a declaration that he was never lawfully disciplined, suspended or subject to termination pursuant to legally mandated procedures under Texas law and that he should not have been.

## JURY DEMAND

36. In accordance with Federal Rule of Civil Procedure 38, Mr. Kramer demands a trial by jury of all issues raised in this civil action that are triable of right or choice to a jury.

## REQUEST FOR RELIEF

37. In accordance with Federal Rule of Civil Procedure 8(a)(3), Mr. Kramer respectively request the following relief:

A. judgment in his favor on all claims asserted in the complaint;

B. a permanent injunction prohibiting the City and those acting in concert with them, from unlawfully retaliating against him or any other city employee because an employee engaged in constitutionally protected speech or made a protected report under the Texas Whistleblower Act;

C. a declaration that the City never disciplined, suspended, lawfully terminated him pursuant to legally mandated procedures under Texas law;

D. judgment requiring the City to fully restore him to work for the City as Sheriff and/or top pay back and reasonable front pay;

E. judgment against the City in an amount sufficient to compensate him for the harms and losses that the violations of law caused, including back pay, compensatory damages, and, if restoration to work is not feasible, front pay;

F. Attorneys' fees and costs.

G. pre-judgment and post-judgment interest as allowed by law; and

H.	for such other and further relief, at law or in equity, to which she may show herself justly entitled.

          **/s/ Adam Poncio**
          **Adam Poncio**
          **State Bar No. 16109800**
          **S.D. ID 194847**
          **salaw@msn.com**
          **Alan Braun**
          **State Bar No. 24054488**
          **S.D. ID 14218056**
          **abraun@ponciolaw.com**
          **PONCIO LAW OFFICES**
          **A Professional Corporation**
          **5410 Fredericksburg Road #109**
          **San Antonio, Texas 78229-3550**
          **Telephone: (210) 212-7979**
          **Facsimile:   (210) 212-5880**

          **ATTORNEYS FOR PLAINTIFF**